FRANK E. AND CELESTA G. HARRIS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Harris v. Commissioner
Docket Nos. 21732-89, 19986-90
United States Tax Court
T.C. Memo 1992-638; 1992 Tax Ct. Memo LEXIS 674; 64 T.C.M. (CCH) 1216; T.C.M. (RIA) 92638; November 3, 1992, Filed Decisions will be entered for respondent. For Petitioners: Irwin D. Zucker. For Respondent: Russell A. Acree, III. HAMBLEN
HAMBLEN
MEMORANDUM FINDINGS OF FACT AND OPINION HAMBLEN, Chief Judge: Respondent determined deficiencies in and additions to Frank E. and Celesta G. Harris' (petitioners) Federal income tax as follows: Additions to Tax
Year
Deficiency
Sec. 6653(a)(1) [1]
Sec. 6653(a)(2)
Sec. 6661
1984
$  4,518
$   226
[2]
1985
14,184
709
[2]
$ 3,546
1986
21,950
1,098
[2]
5,488
1987
17,802
890
[2]
4,451
Unless otherwise indicated, section references are to the Internal Revenue Code in effect for the taxable years at issue. Rule references are to the Tax Court Rules of Practice and Procedure. The issues for decision are: (1) Whether petitioners' activity involving the sale of Mary Kay cosmetics *675 was engaged in for profit within the meaning of section 183; (2) whether petitioners are liable for additions to tax under section 6661 for substantial understatement of income tax for the taxable years 1985, 1986, and 1987; (3) whether petitioners are liable for additions to tax for negligence under section 6653; and (4) whether the deficiency and additions to tax for the 1984 taxable year were conceded. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. The stipulation of facts and exhibits are incorporated herein by this reference. Petitioners, husband and wife, resided in Texas at the time they filed their petitions in these cases. Mrs. Harris has used Mary Kay cosmetics since she was a young girl and began selling cosmetics for Mary Kay Cosmetics Inc. (Mary Kay) in 1982. Petitioners decided to sell Mary Kay cosmetics after watching a television program that outlined the Mary Kay marketing plan and discussed potential financial rewards. At no time did petitioners seek advice from any persons independent of Mary Kay. Within a couple of years Mrs. Harris became, first, a sales director and then a senior sales director. After becoming a sales *676 director, her compensation was derived from commissions based on personal sales, persons recruited, and unit production. In addition to commissions, she received the use of two luxury cars (one in 1985 and one in 1987) for building her organization to a certain size. Although they kept records of expenses, petitioners did not assess the profitability of the activity at any time. Petitioners' records consist primarily of items to substantiate expenses: Canceled checks with summary ledgers, a mileage log, and a calendar noting daily appointments. These expense records include evidence of personal expenditures. For example, floral receipts show flowers sent to Long Beach Pier, North Carolina, with a card that read "Happy Mothers Day * * * Love Frank and Celesta" and other flowers delivered, apparently to Chicago, with a card that read "Welcome to America. Love Frank and Celesta" and balloons and a stuffed bear sent "To Gen. Happy Birthday. Love Bryan." Also presented were numerous copies of canceled checks, that were unannotated, made out to merchants such as J.C. Penney and Wal-Mart. Many of the expenses were paid from a joint checking account that does not appear to have been *677 used solely for business. It is unclear whether expenses attributed to the unannotated canceled checks were for business or for personal pleasure. Petitioners read "Applause" magazine, a Mary Kay publication, and used it as a source of information in planning their activity. The magazine, among other things, published amounts of large commission checks and named the individuals who received these checks. Mrs. Harris believed that if they "built business" they would be profitable. Petitioners showed losses on their Schedule C related to the Mary Kay activity in the following amounts: Year
Amount
1983
$ 33,467
1984
37,546
1985
28,406
1986
32,679
1987
21,286
1988
24,158
1989
10,047
Prior to petitioners' involvement with Mary Kay, Mrs. Harris worked in a gift shop for a short period of time. During the period of petitioners' involvement with Mary Kay, Mr. Harris was employed full time by Luby's Cafeterias as a manager and earned wages in the following amounts: Year
Amount
1984
$ 160,850.69
1985
165,299.94
1986
183,176.62
1987
158,648.91
The notice setting case for trial was mailed to petitioners on September 26, 1991. Trial was held on February *678 26, 1992. As part of their notice, petitioners received a standing pretrial order which clearly stated that continuances will be granted only in exceptional circumstances and referred petitioners to Rule 134. Rule 134 states that employment of new counsel ordinarily will not be regarded as ground for continuance. At the trial, petitioners moved for a continuance in order to retain new counsel because they felt that their counsel of record had not adequately advised them of the documents necessary to substantiate their deductions. The motion was denied. At the trial, petitioners' counsel of record conceded the deficiency and additions to tax for the 1984 taxable year. The following discussion took place at trial. MR. ACREE: Petitioners have also conceded 1984. THE COURT: They have conceded 1984? MR. ACREE: The deficiency in and additions to tax for 1984. THE COURT: Is that correct, Counselor? MR. BURFORD: That is correct, Your Honor. THE COURT: You are stating for the record that, 1984, the deficiency is stipulated. MR. BURFORD: That is correct. OPINION The first issue for decision is whether this Court will consider the 1984 taxable year to be in controversy. Petitioners *679 were notified 5 months before trial of their trial date. As part of their notice, petitioners received a standing pretrial order which clearly stated that continuances will be granted only in exceptional circumstances and referred petitioners to Rule 134. Rule 134 states that employment of new counsel ordinarily will not be regarded as a ground for continuance. Motions for continuances are disposed of in the sound discretion of the Court and rulings upon such motions are reversible only upon showing of an abuse of discretion. Lessmann v. Commissioner, 327 F.2d 990, 996 (8th Cir. 1964), affg. T.C. Memo. 1962-253. It is within the Court's discretion to consider the prejudice to all parties to a case when ruling on a motion to continue a trial. See Brooks v. Commissioner, 82 T.C 413, 429-430 (1984), affd. without published opinion 772 F.2d 910 (9th Cir. 1985). Petitioners requested a continuance so they could try to gather records to substantiate their deductions based on instruction by new counsel. We considered prejudice to petitioners, respondent, the Court, *680 and other taxpayers when denying petitioners' motion for continuance. We concluded that petitioners had more than adequate notice and time, if necessary, to change counsel and prepare their case. Rule 134 provides that a motion for continuance filed less than 30 days prior to trial, ordinarily will be deemed dilatory and denied unless good reason is shown for not making the motion sooner. Petitioners made their motion for continuance on the day of trial and did not show a sufficient reason for their failure to make it sooner. Indeed, we believe that it would have been an abuse of judicial discretion to grant petitioners' motion to continue the case on the date of trial. Petitioners had 5 months' advance notice of trial, which is normally more than enough time to make all arrangements, including selection of counsel for trial. Respondent was ready for trial. Petitioners assert that this Court should disregard their concession of the 1984 taxable year. They allege that their attorney at trial incorrectly conceded it and that they did not hear the concession in open court. But petitioners' counsel had the authority to act on petitioners' behalf. At trial, twice we were told *681 by petitioners' counsel that the 1984 taxable year was conceded. Petitioners were present in Court during this time and neither opposed nor indicated any protest or disagreement respecting the concession. The Court will permit a party to a stipulation to contradict the statement only where justice requires. Rule 91(e). We find that justice does not require the concession to be withdrawn and find that the deficiency and additions to tax for the 1984 taxable year were conceded. In any event, even if the 1984 taxable year were not conceded, the issues in 1984 were identical to those of 1985, 1986, and 1987 and would have been disposed of in the same fashion. The second issue for decision is whether petitioners are entitled to business deductions with respect to petitioners' activity involving Mary Kay. Section 162(a) allows a deduction for all ordinary and necessary expenses paid or incurred in carrying on any trade or business. Section 212 allows an individual taxpayer a deduction for the ordinary and necessary expenses paid (1) for the production or collection of income; and (2) for the management, conservation, or maintenance of property held for the production of income. *682 Section 183 provides that a taxpayer will not be allowed a deduction under section 162 or 212 for an activity not engaged in for profit. In determining whether an activity is engaged in for profit, greater weight is given to objective facts than to the taxpayer's mere statement of his intent. Thomas v. Commissioner, 84 T.C. 1244, 1269 (1985), affd. 792 F.2d 1256 (4th Cir. 1986); sec. 1.183-2(a), Income Tax Regs.
All of the facts and circumstances with respect to an activity are taken into account in determining whether an activity is engaged in with a profit objective and no single factor controls. Golanty v. Commissioner, 72 T.C. 411, 425-426 (1979), affd. without published opinion 647 F.2d 170 (9th Cir. 1981). The essential factor in determining whether an activity is conducted for profit is whether the taxpayer had an actual and honest objective of realizing a profit from the activity, regardless of the reasonableness of the expectation of profit. Dreicer v. Commissioner, 78 T.C. 642, 644-645 (1982), affd. without opinion 702 F.2d 1205 (D.C. Cir. 1983). *683 Applicable Treasury regulations list several nonexclusive factors to take into account in determining whether an activity was conducted with the objective to make a profit. Sec. 1.183-2(b), Income Tax Regs. The factors listed include the following: (1) The manner in which the taxpayer carries on the activity; (2) the expertise of the taxpayer or his advisors; (3) the time and effort expended by the taxpayer in carrying on the activity; (4) the expectation that assets used in the activity may appreciate in value; (5) the success of the taxpayer in carrying on other similar or dissimilar activities; (6) the taxpayer's history of income or losses with respect to the activity; (7) the amount of occasional profits, if any, which are earned; (8) the financial status of the taxpayer; and (9) the elements of personal pleasure or recreation. Sec. 1.183-2(b)(1)-(9), Income Tax Regs.
Whether petitioners' activity with Mary Kay cosmetics was an activity entered into with the requisite profit objective is a question of fact that must be determined based on the entire record. Dunn v. Commissioner, 70 T.C. 715 (1978), affd. 615 F.2d 578 (2d Cir. 1980); *684 Benz v. Commissioner, 63 T.C. 375, 382 (1974). Petitioners bear the burden of proving that they engaged in the Mary Kay activity with the objective of making a profit and that deductions claimed on their Schedules C were properly taken. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Based on a consideration of all the facts and circumstances, we conclude that petitioners did not engage in the Mary Kay activity with the objective to make a profit. We base our conclusion, in part, on the unbusinesslike manner in which the Mary Kay activity was conducted. First, there was little or no division between petitioners' personal and business activities. Although petitioners presented voluminous records to support the expense deductions taken, some of the records clearly reflect personal expenses. In addition, many of the records could substantiate personal or business expenses and petitioners' self-serving statements are the only evidence presented to prove that the expenses were for business. We are not required to accept self-serving testimony. Tokarski v. Commissioner, 87 T.C. 74, 77 (1986); *685 Pascarelli v. Commissioner, 55 T.C. 1082, 1095 (1971), affd. without published opinion 485 F.2d 681 (3d Cir. 1973). In addition to petitioners' failure to separate personal expenditures from business expenses, petitioners failed to maintain books and records that would aid in assessing the true profits or losses of the activity. Indeed, based on a review of the records presented, we are uncertain how the losses were computed for the purpose of preparing the tax returns. Petitioners did not substantiate that expenses claimed in arriving at those losses in fact related to the Mary Kay activity, much less that this activity was carried on with a bona fide profit objective. Mrs. Harris testified that she could assess profitability during the years with her records but had not done so. The failure of petitioners to assess the status of the activity during the tax years does not suggest a profit objective. Other evidence of the unbusinesslike manner in which the Mary Kay activity was conducted is the failure of petitioners to seek advice of others independent of the Mary Kay operation regarding the activity. The record shows *686 that Mrs. Harris did not have previous expertise or experience in this or any similar business. Petitioners decided to enter into the Mary Kay business after watching a television show. Petitioners believed that a substantial profit could be made because of perceived profits of others alluded to in the "Applause" magazine, a publication of Mary Kay. Petitioners also believed that if they built business, they would be profitable. Petitioners contend that great time and effort were expended in the activity. The only evidence that this contention is true is petitioners' self-serving statements. Petitioners also contend that the Mary Kay activity lacks any element of personal pleasure or recreation. Petitioners did not present any persuasive evidence that this contention is true. It is conceivable that the activity did offer personal pleasure and recreation for Mrs. Harris as she dined with and met people with similar interests, traveled, and gave flowers and gifts to acquaintances who may or may not have been involved in Mary Kay. It is undisputed that Mr. Harris earned a substantial salary each year. In fact, it is only because of Mr. Harris' salary that petitioners were able *687 to continue incurring substantial losses of nearly $ 190,000 in the Mary Kay activity. In sum, we find that petitioners did not have the requisite profit objective based on comparison of their actions to objective factors. The third issue for decision is whether petitioners are liable for additions to tax under section 6661. Section 6661(a) provides that if there is a substantial understatement of income tax for a taxable year, there shall be added to the tax an amount equal to 25 percent of the amount of any underpayment attributable to such understatement. Pallottini v. Commissioner, 90 T.C. 498 (1988). There is a substantial understatement of income tax if the amount of the understatement exceeds the greater of 10 percent of the tax required to be shown on the return, or $ 5,000. Sec. 6661(b)(1). According to the notice of deficiency and petitioners' tax returns, it is clear that petitioners' income tax was substantially understated for the 1985, 1986, and 1987 taxable years. Consequently, respondent's determination of additions to tax for substantial understatements is sustained. The fourth issue for decision is whether petitioners are liable *688 for additions to tax for negligence. Section 6653(a) provides for an addition to tax if any part of the underpayment is due to negligence or intentional disregard of the rules or regulations. Negligence is defined as the failure to exercise due care that a reasonable and ordinarily prudent person would exercise under the circumstances. Neely v. Commissioner, 85 T.C. 934, 947 (1985); Marcello v. Commissioner, 380 F.2d 499, 506 (5th Cir. 1967), affg. on this issue 43 T.C. 168 (1964). Petitioners have the burden of proving that the underpayment was not due to negligence or intentional disregard of the rules or regulations. Rule 142(a); Bixby v. Commissioner, 58 T.C. 757, 791-792 (1972); Enoch v. Commissioner, 57 T.C. 781, 802-803 (1972). Petitioners did not offer any persuasive evidence that their underpayment was not due to negligence. We find that petitioners intentionally disregarded the rules and regulations by claiming a business loss for an activity that was not engaged in with the objective to make a profit. Consequently, *689 respondent's determination of additions to tax for negligence is sustained. To reflect the foregoing, Decisions will be entered for respondent. Footnotes
1. The additions to tax for negligence for the taxable year 1986 and 1987 are codified under section 6653(a)(1)(A) and (B). ↩
2. 50% of the interest due on deficiency.↩